IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| 6420 ROSWELL RD., INC. | * | |
| d/b/a Flashers, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | CIVIL ACTION FILE |
| | * | |
| CITY OF SANDY SPRINGS, | * | NO. _____ |
| GEORGIA, and DOUGLAS A. | * | |
| BROWN, in his individual | * | |
| capacity only, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT FOR DAMAGES

### NATURE OF CASE

1.

Using its building and fire safety ordinances as a pretext, the City of Sandy Springs, through its fire marshal and others, searched and closed Flashers without meaningful notice or an opportunity to be meaningfully heard.  The City's feat was possible in part because the ordinances lack procedural safeguards to prevent indefinite closures.  This systemic shortcoming is especially troublesome here, where the ordinances were applied because of a distaste for erotic messages offered by a nude dance establishment located on a high-profile corridor of the City.  Flashers seeks damages

for claims arising under the First, Fourth and Fourteenth Amendments to the federal Constitution.

<u>PARTIES</u>

2.

Plaintiff 6420 ROSWELL RD., INC. ("Flashers") is a corporation organized and existing under the laws of the State of Georgia which owns and operates an establishment offering nude dance entertainment at 6420 Roswell Road, Atlanta, Fulton County, Georgia 30339.

3.

Defendant CITY OF SANDY SPRINGS ("the City") is a political subdivision of the State of Georgia which has the capacity to sue and to be sued.

4.

Defendant DOUGLAS A. BROWN ("Brown") is a Division Commander of the Fire Marshall's Office for the City of Sandy Springs Fire Department at all times relevant to the allegations of this complaint.  Brown acted at all times with final policy-making authority for the City on matters relating to closures of businesses based on fire safety code conditions.  Brown is sued in his individual capacity, and he is subject to the jurisdiction of this Court.

VENUE

5.

All acts or omissions alleged in this complaint have occurred, or likely will occur, in the Northern District of Georgia and therefore venue is properly within this district under 28 U.S.C. § 1391(b).

JURISDICTION

6.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7.

Attorney's fees are authorized by 42 U.S.C. § 1988.

8.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and

the Constitution of the State of Georgia.

9.

By letter dated June 2, 2017, Flashers perfected an
ante litem notice of its claims (detailed in this complaint)
to the City of Sandy Springs. <u>See</u> O.C.G.A. § 36-33-5(b).

<u>FACTS</u>

10.

Flashers owns and operated a "gentlemen's club" or
cabaret which, at the time, featured live-nude exotic dance
performances in the City of Sandy Springs.

11.

Exotic dance performances communicate a specific
message of eroticism which includes both an intellectual
component and an emotive component emphasizing sensuality,
passion and excitement.

12.

The City objected to the message communicated by
Flashers as well as by other gentlemen's clubs and sexually
oriented businesses operating within the City.

<u>Flashers's history with the City</u>

13.

Flashers opened in 1990 and operated as an adult
entertainment establishment serving alcoholic beverages in
unincorporated Fulton County.

14.

On December 1, 2005, the City of Sandy Springs was incorporated as a municipal corporation and Flashers became subject to the City's jurisdiction.  <u>See</u> 2005 Ga. Laws 35. That day the City turned its attention to adopting adult entertainment and alcoholic beverage licensing laws.

15.

On September 6, 2018, Flashers closed its doors after its challenges to the City's adult entertainment ordinances failed.

<u>The City's fire safety regulations</u>

16.

The City regulates "Fire Prevention and Protection" under Chapter 22 of its Code of Ordinances.  Under that chapter, the City has adopted the "International Fire Code, referenced in O.C.G.A. § 8-2-20(9)(B), as adopted and amended from time to time by the department of community affairs, for the purpose of establishing rules and regulations for the alteration and repair of existing buildings and other similar work in the city...."  City Code § 22-26(a)(1).

17.

Because the City has adopted the International Fire Code ("IFC"), it maintains a "current copy" of that code "on

file in the office of the city clerk, where it [is]

available for public inspection." City Code § 22-26(a)(1).

18.

Violations of the IFC are covered under Chapter 1, Part

1, Section 109:

> It shall be unlawful for a person, firm or
> corporation to erect, construct, alter, repair,
> remove, demolish or utilize a building, occupancy,
> premises or system regulated by this code, or
> cause same to be done, in conflict with or in
> violation of any of the provisions of this code.

IFC § 109.1 (Unlawful acts).

19.

Also under that section of the IFC:

> In addition to the imposition of the penalties
> herein described, the fire code official is
> authorized to institute appropriate action to
> prevent unlawful construction or to restrain,
> correct or abate a violation; or to prevent
> illegal occupancy of a structure or premises; or
> to stop an illegal act, conduct or business or
> occupancy of a structure on or about any premises.

IFC § 109.4.1 (Abatement of violation).

20.

Unsafe buildings are covered under Chapter 1, Part 1,

Section 110 of the IFC:

> If during the inspection of a premises, a building
> or structure, or any building system, in whole or
> in part, constitutes a clear and inimical threat
> to human life, safety or health, the fire code
> official shall issue such notice or orders to
> remove or remedy the conditions as shall be deemed
> necessary in accordance with this section, and

> shall refer the building to the building
> department for any repairs, alterations,
> remodeling, removing or demolition required.

IFC § 110.1 (General).

21.

The IFC describes unsafe conditions as follows:

> Structures or existing equipment that are or
> hereafter become unsafe or deficient because of
> inadequate means of egress or which constitute a
> fire hazard, or are otherwise dangerous to human
> life or the public welfare, or which involve
> illegal or improper occupancy or inadequate
> maintenance, shall be deemed an unsafe condition
> ....

IFC § 110.1.1 (Unsafe conditions).

22.

Under the IFC, a fire code official can order the immediate evacuation of "any occupied building deemed unsafe where such building has hazardous conditions that present imminent danger to building occupants.  Persons so notified shall immediately leave the structure or premises and shall not enter or re-enter until authorized to do so by the fire code official...."  IFC § 110.2 (Evacuation).

23.

Under the IFC, where the fire code official has deemed the premises unsafe, the "owner, the owner's authorized agent, operator or occupant of a building or premises deemed unsafe by the fire code official shall abate or cause to be

abated or corrected such unsafe conditions either by repair, rehabilitation, demolition or other approved corrective action."  IFC § 110.4 (Abatement).

                              24.

     The IFC establishes a "board of appeals" to hear and decide appeals of "orders, decisions or determinations made by the fire code official relative to the application and interpretation" of the code.  Chapter 1, Part 1, Section 108, § 108.1 (Board of appeals established).  This board of appeals "shall consist of members who are qualified by experience and training to pass on matters pertaining to hazards of fire, explosions, hazardous conditions or fire protection systems, and are not employees of the jurisdiction."  IFC § 108.3 (Qualifications).

                              25.

     The City has created a Board of Appeals, which, among other functions, hears appeals from any person aggrieved by an action of the fire chief or any other city official or employee of the city fire department.  See City Code §§ 2-245 & 22-27(a).

                              26.

     The Board of Appeals makes its own rules of procedure, and it determines when it will hold its meetings.  See City Code § 2-250(a).  Typically the Board of Appeals convenes

once a month.

27.

Upon information and belief, the members of the City's
Board of Appeals do not meet the qualifications set out by
the IFC.

28.

Upon information and belief, the City has not
legislatively adopted the National Fire Protection
Association Life Safety Code 101 (NFPA 101).

The raids

29.

In the fall of 2016, the City, through its policymakers
(including Fire Marshal Brown), began planning to raid all
three establishments within its borders that offer live nude
dance entertainment:  Flashers, Mardi Gras, and the Doll
House f/k/a Maxim Cabaret.

30.

In what the City would call "administrative
inspections," city officials would stop all activity in the
clubs (turn off the music, turn on the house lights, stop
dance performances, and check identification), and segregate
patrons from dancers and employees.  During this
"inspection," the people patronizing or working at the clubs
would not be permitted to enter or leave the premises.

31.

On December 14, 2016, representatives of the Sandy Springs Fire Marshal's Office participated in a raid at Flashers along with numerous City employees, including a number of police officers and code enforcement officials.

32.

Before carrying out the raid, the City notified at least one local television news station (WSB-TV), allowing a reporter to ride along and cover the raid as it was occurring.

33.

At Fire Marshal Brown's direction, the City's fire safety officials looked for any conceivable violations of City ordinances or even state law at Flashers.

34.

On this night, none of the city officials had a warrant to search Flashers's property or to arrest Flashers's dancers or employees.

<u>The Fire Marshal closes Flashers</u>

35.

On December 19, five days after the Fire Marshal's Office performed the inspection, Fire Marshal Brown ordered Flashers to shut down and cease operations and then provided Flashers with a Field Inspection Report (the "Report")

detailing alleged City code violations.

36.

In the Report, Fire Marshal Brown identified alleged violations and marked with asterisks those which he deemed "must be corrected immediately," and he stated that "due to the seriousness of those violations," Flashers "is declared unsafe and is ordered to be closed to [sic] business."  This report also stated, "Upon correction of the noted fire and life safety code violations and a follow-up inspection by local authorities to ensure compliance, the business will be cleared by the Sandy Springs Fire Marshal's Office to re-open."

37.

After receiving the Report on December 19, Flashers hired a licensed electrician to review and correct the items marked with asterisks.

38.

On December 23, Fire Marshal Brown, accompanied by a private (non-city employee) electrician, visited Flashers to ensure compliance with Report's closure order.  After another inspection, Brown informed Flashers that it had repaired all of the Report's items marked with asterisks.

39.

On that day, however, Brown stated that all of the

repairs or corrections performed by the licensed electrician were done without a permit and thus his closure order would continue indefinitely.  Brown then told Flashers that he had discovered new violations during this follow-up inspection, and he stated that Flashers would receive a written list of the new alleged violations.

40.

After Brown's December 23 inspection, Flashers hired another licensed electrician who, on December 26, confirmed that all of the repairs made by the first electrician were sufficient and that none of those repairs required permitting by the City.

41.

Despite that Flashers had repaired or corrected all items in the Report marked with asterisks as of December 23, the City (through the Fire Marshal) ordered that Flashers remain closed.

42.

Following the December 23 inspection, Flashers repeatedly requested that the City or Fire Marshal Brown produce a written list of the so-called new violations that were keeping Flashers closed, but the defendants failed to provide one.

43.

On December 27, Flashers's electrician applied for permits for past and future repairs at Flashers.  The City denied these permits without explanation.

44.

While Flashers was closed, it was prevented from offering First Amendment-protected entertainment, and it suffered economic damages, including lost profits and loss of goodwill.

45.

Neither the City nor Fire Marshal Brown produced a complete list of violations as promised by Fire Marshal Brown (see ¶ 39).

46.

On December 29, 2016, Flashers sued the City and certain individuals seeking a temporary restraining order requiring those defendants to withdraw the shutdown order prohibiting Flashers from operating its business.  [See 6420 Roswell Rd., Inc. v. City of Sandy Springs, et al., No. 2016-cv-284200 (Fulton County Sup. Ct. filed Dec. 29, 2016).]  On December 30, the Superior Court held a hearing on Flashers's TRO motion and granted the motion by ordering the City to lift its shutdown order and noting "that all items marked with asterisks have been completed and the

items that were not marked with asterisks have also been
inspected and are determined by the electrical inspector to
be satisfactory and not in violation of any code." Flashers
was able to open later that night.

47.

Flashers dismissed its state court action without
prejudice on November 22, 2017.

48.

Upon information and belief, the City has never before
summarily closed a business based on alleged violations of
its building or fire safety ordinances, as it did here.

49.

Although the City had inspected Flashers on many
occasions (i.e., building, fire, police) over the years, the
City has never found a single condition or item that it
considered dangerous to human life.

50.

Normally, when the City inspects a business and
determines there are minor items that need repair, the City
provides the business notice of the items and a reasonable
time within which the business may correct those items,
while remaining open.

51.

The City's closure order (and continued orders to

remain closed) was not based on an actual emergency or
exigent threat to the health, safety and welfare of the
community, but instead was pretextual in nature and intended
to harass or harm Flashers.

52.

The City's failure to provide either a pre-deprivation
notice or an opportunity to be heard, or at least an
immediate hearing following a deprivation based on exigent
circumstances, violated Flashers's due process and free
speech rights.

53.

Flashers exhausted whatever administrative remedies
were available to it or, to the extent that any such
remedies were not exhausted, those remedies would have been
futile for Flashers to pursue.

<u>Count 1</u>

<u>42 U.S.C. § 1983: Due Process Clause violations</u>

(All defendants)

54.

Flashers realleges each fact set forth in paragraphs 1
through 53 of this complaint and incorporates them here by
reference.

55.

The actions of the defendants deprived Flashers of

property rights and liberty interests protected by the Due
Process Clause of the Fourteenth Amendment to the United
States Constitution, in that, <u>inter alia</u>:

    (a)  The City's ordinances give Fire Marshal Brown the
unfettered discretion to conduct unreasonable
inspections and to issue unreasonable emergency
closure orders (such as those based on the Life
Safety Code, which the City has not legislatively
adopted) without any meaningful substantive
standards to guide that discretion and without
necessary procedural safeguards to prevent an
erroneous deprivation, and any post-deprivation
remedy offered by the City's ordinances (or the
State) will not adequately cure the erroneous
deprivation;

    (b)  The "night inspection" conducted on December 14
was pretextual and was undertaken with no reason
to believe that Flashers was in violation of the
IFC in a way that posed a serious threat to human
life.  The problems discovered were either minor
or technical in nature (for example, a failure to
obtain a permit for construction which is
otherwise code-compliant); and

    (c)  The City refused to issue a routine work permit

which Flashers needed to address the violations
alleged by the City, and the City refused or
failed to provide the 'new' list of alleged
violations so that Flashers could review and, if
necessary correct those items in order to re-open.

<u>Count 2</u>

<u>42 U.S.C. § 1983: Free Speech Clause violations</u>

(All defendants)

56.

Flashers realleges each fact set forth in paragraphs 1
through 53 of this complaint and incorporates them here by
reference.

57.

The actions of the defendants have deprived Flashers of
property rights, liberty interests, and freedom of
expression, protected by the Free Speech Clause of the First
and Fourteenth Amendments to the federal Constitution, in
that, <u>inter alia</u>:

(a)   The City's ordinances are unconstitutional as
applied to Flashers because they allowed the
defendants to impose a prior restraint on speech
using unfettered discretion under a scheme which:
(i) does not require the City's Board of Appeals
to hold an immediate post-deprivation hearing;

(ii) Brown's discretion here was intentionally abused with the purpose and effect of depriving Flashers of its First Amendment rights;

(b) The timing and conduct of the "night inspection" was purposely calculated to scare away Flashers's performers and patrons so that Flashers was unable, or severely crippled in trying, to reopen its business after repairs were made; and

(c) Reliance on IFC and NFPA (Live Safety Code) provisions as bases for the defendants' emergency closure order was pretextual. The defendants knew that there were no serious code violations at Flashers, and they knew that Flashers did not pose an immediate threat to the health, safety or welfare of the community.

Count 3

42 U.S.C. § 1983: Fourth Amendment violation

(All defendants)

58.

Flashers realleges each fact set forth in paragraphs 1 through 53 of this complaint and incorporates them here by reference.

59.

The defendants' search of the premises exceeded the

narrow scope allowed by the administrative search exception
to the Warrant Clause of the Fourth Amendment.

60.

The defendants violated the Fourth Amendment when they
entered, remained and searched the premises of Flashers
without a search warrant, consent, or exigent circumstances
justifying their unlawful intrusion upon the premises.

61.

Flashers is entitled to an award of economic damages,
including lost profits and loss of commercial opportunities,
for the defendants' unlawful intrusion upon the premises.

<u>Count 4</u>

Negligence

(City of Sandy Springs)

62.

Flashers realleges each fact set forth in paragraphs 1
through 53 of this complaint and incorporates them here by
reference.

52.

Flashers timely delivered to the City ante litem
notice.

54.

The City of Sandy Springs has purchased liability
insurance that provides coverage and indemnification for

liability arising from the operations of the City's police and fire departments and the conduct of the city officers employed by the City.  That policy was in effect at all times relevant to this complaint.

55.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Sandy Springs.

56.

The City declined to settle the potential lawsuit.

57.

During the course of his employment and while fulfilling his official duties, Fire Marshall Brown failed to competently investigate Flashers premises which resulted in a prolonged closure of the business.

58.

The City is liable for the intentional and negligent actions of Fire Marshall Brown (and others) under the doctrine of respondeat superior for violations of State law. Under that doctrine, the City is not entitled to present a defense of official immunity.

**WHEREFORE**, Flashers prays:

(a)  That as to Counts 1, 2, 3 and 4 of this Complaint,

the Court grant compensatory (and, where applicable, punitive) damages;

(b)   That it have a trial by jury on all issues so triable;

(c)   That the Court award Flashers its reasonable costs and attorney's fees as authorized by 42 U.S.C. § 1988; and

(d)   That the Flashers be granted such other and further relief as the Court deems just and proper.

Respectfully submitted,

BY: /s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:  (404) 659-2880
Facsimile:  (404) 659-3274
www.wigginslawgroup.com